UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                  Case No. 09-67133

JACQUELINE M. BATES,                                    Chapter 7

        Debtor.                                Hon. Walter Shapero

_____/

## OPINION SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS

The matter before the Court is Trustee's Objection to Debtor's Third Amended Claim of Exemptions (Docket No. 41).

### BACKGROUND

Jacqueline Bates ("Debtor") is 56 years old. She worked for General Motors ("GM") for 30 years before retiring on April 1, 2009. Debtor took an early retirement option offered under GM's 2009 Special Attrition Program, in which she received a $20,000 cash payment and a $25,000 vehicle voucher. The vehicle voucher is valid for a period of 18 months from Debtor's retirement on April 1, 2009 and will expire on September 30, 2010.

Debtor filed her Chapter 7 bankruptcy petition on August 31, 2009. She did not disclose the vehicle voucher on her originally filed Schedules. On October 8, 2009, at the 341 Meeting of Creditors, the Trustee discovered that Debtor had an interest in the vehicle voucher.

On October 13, 2009, the Trustee filed his Motion to Compel Debtor to Turnover Non-Exempt Property of the Estate with respect to the vehicle voucher. On October 22, 2009, Debtor filed amended Schedules B and C to disclose the vehicle voucher and exempt it under 11 U.S.C. §§ 522(d)(10)(E), 522(d)(11)(E), 522(d)(5). Debtor subsequently filed a response the Trustee's Motion for Turnover objecting to turnover on the grounds that the vehicle voucher had been claimed as exempt. On November 13, 2009, the Trustee filed his Objection to Debtor's Second Amended Claim of Exemptions. On December 17, 2009, the Court held a hearing on the Trustee's Motion for Turnover and Trustee's Objection to Debtor's Second Amended Claim of

1

Exemptions. At the hearing, the Court scheduled the matter for an evidentiary hearing. Debtor thereafter filed a Third Amended Schedule C, on which she claimed the vehicle voucher exempt in the amount of $25,000 under 11 U.S.C. § 522(d)(11)(E) and $0.00 under 11 U.S.C. § 522(d)(5).

On January 21, 2010, the Trustee filed Trustee's Objection to Debtor's Third Amended Claim of Exemptions, in which Trustee objected to the Debtor's exemption of the vehicle voucher on four grounds: (1) the Debtor's claim of exemption under any provision should be disallowed due to bad faith and concealment; (2) the Debtor's claim of exemption under any provision should be disallowed due to prejudice to the bankruptcy estate; (3) the Debtor's claim of exemption under § 522(d)(11)(E) should be disallowed because the vehicle voucher is not a payment in compensation of loss of future earnings; and (4) the Debtor's claim of exemption under § 522(d)(11)(E) should be disallowed because the vehicle voucher is not reasonably necessary for the support of the Debtor or Debtor's dependents.

The Court scheduled an initial evidentiary hearing on the issues of whether the Debtor's claims of exemption should be disallowed on the grounds of bad faith, concealment, or prejudice. The Court then issued a bench opinion finding that the Debtor's claim of exemption of the vehicle voucher should not be denied on the grounds of bad faith, concealment, or prejudice, and consequently also scheduled an evidentiary hearing on the remaining objections.

At that hearing, the Trustee conceded that the vehicle voucher was a payment in compensation of loss of future earnings within the meaning of § 522(d)(11)(E). Accordingly, the sole remaining issue became whether the vehicle voucher is reasonably necessary for the support of the Debtor and Debtor's dependents.

### DISCUSSION

Section 522(d)(11)(E) of the Bankruptcy Code provides, in pertinent part:

(d) The following property may be exempted under subsection (b)(2) of this section:

    (11) The debtor's right to receive, or property that is traceable to-

        (E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor

2

11 U.S.C. § 522(d)(11)(E). Under that provision, the Court must determine: (1) whether the asset is a payment in compensation of loss of future earnings, and (2) whether and to what extent it is reasonably necessary for the support of the debtor and debtor's dependents. *In re Rockefeller*, 100 B.R. 874, 877 (Bankr. E.D. Mich. 1989), *aff'd*, 109 BR. 725 (E.D. Mich. 1989). "The Trustee, as the objecting party, has the burden of producing evidence which rebuts the prima facie presumption that the exemption is correct." *In re* Mann, 201 B.R. 910, 915 (Bankr. E.D. Mich. 1996). "If the Trustee fails to carry the burden of proving by a preponderance of the evidence that the exemption should be disallowed, the exemption will stand." *Id*.

The term "reasonably necessary" is not defined in the Bankruptcy Code. The following factors are routinely used by the courts to determine whether the funds are reasonably necessary for the support of the debtors and their dependents:

1. Debtor's present and anticipated living expenses;
2. Debtor's present and anticipated income from all sources;
3. Age of the debtor and dependents;
4. Health of the debtor and dependents;
5. Debtor's ability to work and earn a living;
6. Debtor's job skills, training and education;
7. Debtor's other assets, including exempt assets;
8. Liquidity of other assets;
9. Debtor's ability to save for retirement;
10. Special needs of the debtor and dependents;
11. Debtor's financial obligations, e.g., alimony or support payments.

*In re Rector*, 134 B.R. 611, 617 (Bankr. W.D. Mich. 1991).

### **Factors 1 and 2**

The first two factors the Court will consider are Debtor's present and anticipated living expenses and income.

Debtor owns two parcels of real estate, the Stonehenge Property (in which Debtor lives) and the Kendall Property. Debtor provided a list of her currently living expenses in response to one of Trustee's interrogatories, which include the following expenses: mortgage on her Stonehenge property ($672.85); second mortgage on her Stonehenge property ($117.00-125.00);

3

condo association fees ($444.40); mortgage on her Kendall property ($529.11); utilities for both properties ($199.00); water bill for Kendall property ($41.23); telephone ($83.35); cable ($78.21); food ($200.00-240.00); clothing ($100.00); prescriptions ($150.00); health extras ($9.45); gasoline ($195.00); contribution to Kingdom Hall ($86.66); homeowner's insurance for both properties ($77.08); life insurance ($41.80); auto insurance ($153.47), property taxes for the Kendall property ($7.61 for summer and $96.87 for winter); cell phone ($83.69); alarm service for the Kendall property ($34.99); storage fees ($42.00); and Fidelity personal savings plan loan repayment ($198.24).

Debtor's testimony at the evidentiary hearing indicates that several of the expenses she listed in her response to Trustee's interrogatories are in an inaccurate amount or are paid by her mother. Furthermore, the Trustee argues that many of the expenses are not reasonably necessary for the support of the debtor and, thus, should not be considered in determining whether the vehicle voucher is reasonably necessary for the support of the Debtor.

The Trustee argues that the monthly expenses related to the Kendall property are not reasonably necessary for the support of the Debtor since Debtor does not reside there and has no dependents residing there, there is no equity in that property, and Debtor did not reaffirm the debt on that property. The Kendall property is a two unit building. Debtor's mother, Joyce Bates, resides in the upper unit. The lower unit is currently vacant, but Debtor has been able to rent out that unit for approximately $550.00 per month. Debtor's mother contributes to the monthly mortgage expense for that property on occasion and she pays a portion of the homeowner's insurance cost for the property. Debtor did not list her mother as a dependent on her Schedule I, and she repeatedly testified that her mother is not her dependent and that her mother has her own income and pays for her own personal expenses, so the Court is not considering the mother as a dependent of the Debtor for purposes of this decision.

The expenses associated with the Kendall property total $861.12 per month and include: mortgage ($529.11), summer and winter taxes ($7.61 and $96.87 respectively), utilities ($100.00), water bill ($41.23), alarm system ($34.99), and homeowner's insurance ($51.31). Debtor's mother pays the utility costs, water bill, alarm service costs, and a portion of homeowner's insurance premium for that property. Debtor is currently paying expenses for the

4

property totaling $684.90, which includes the mortgage payment, taxes, and the remaining cost of the homeowner's insurance.

Debtor also testified that her cable costs recently decreased from $78.21 to $53.71 per month. Due to a mathematical error, Debtor's homeowner's insurance cost is actually $83.49, which is slightly higher than the value she listed on her response to Trustee's interrogatories.

Debtor's actual monthly expenses adjusted for accuracy to account for the change in her cable costs, correction of the error for homeowner's insurance costs, and the expenses paid my her mother total $3456.70. In addition to those expenses, she may also need to pay back a possible GM setoff in the future, which would add an additional $86.66 expense each month.

Debtor currently receives $2,100 in net monthly Social Security Disability payments and $1,384.41 in net monthly pension payments under the GM Hourly Pension Plan. Debtor's net monthly income is currently $3,484.41. The Debtor will also eventually receive income from her GM Personal Savings Plan retirement account, which currently has a balance of approximately $38,570.90 and which will have an increase in value of approximately $9,461.51 after Debtor has repaid an outstanding loan she took against it.

The Court agrees with the Trustee that the expenses related to the Kendall property are not reasonably necessary for the support of the Debtor.[1] Therefore, Debtor's expenses should be further decreased by $684.90, which lowers Debtor's monthly expenses to $2,771.80, leaving a net monthly income of $712.61. It should also be noted that, beginning in December 2010, Debtor's condo association dues will decrease by $113.40, increasing her net monthly income to $826.01. Also, Debtor's expenses will further decrease after she completes her Fidelity Personal Savings Plan loan repayment, and, once she reaches full retirement age, she will begin receiving additional income from that plan. Accordingly, the Debtor has sufficient monthly income to pay her expenses and incidentals, as well as sufficient income to purchase a vehicle if and when she needs one in the future.

### **Factors 3, 4, 5, 6, and 9**

---

[1] If Debtor wishes to provide for her mother, she has several options available, such as moving in with her mother at the Kendall property, having her mother move in with her at the Stonehenge, or finding a new home for the two of them.

Next, the Court will consider the following factors as they relate to the Debtor: (3) age; (4) health; (5) ability to work and earn a living; (6) job skills, training, and education; (9) ability to save for retirement. Debtor is 56 years older and is permanently disabled. Although she is unable to work or further contribute to her retirement, she is currently retired and receives monthly pension payments and Social Security Disability payments, which provide her with more than sufficient income to meet her expenses. As noted earlier, Debtor also has a Personal Savings Plan retirement account with a balance of $38,570.90, which will eventually have an additional value of at least $9,461.51 after she has repaid the loan she took against it.

### Factors 7 and 8

Next, the Court will consider the seventh and eighth factors - Debtor's other assets, including exempt assets, and the liquidity of those assets. Debtor's other assets include her Personal Savings Plan, two checking accounts, two savings accounts, and two vehicles. Debtor currently has four bank accounts, which have exempt balances totaling approximately $27,112.42. Debtor argues that GM has a possible setoff claim against her in excess of $30,000 and that she has earmarked approximately $22,000.00 of the cash in those accounts to repay GM's claim if she is required to do so.

Debtor also has two vehicles: a 1999 Chrysler 300M and a 1986 Mercedes Benz. Neither of the vehicles have liens. Debtor's Chrysler 300M has approximately 84,000 miles and all current maintenance needs have been performed. The Debtor testified that no major repairs are needed for the vehicle and that the only maintenance she anticipates the vehicle needing in the near future is new brakes. The Debtor testified that the Mercedes Benz is currently inoperable, but she thinks she could sell the vehicle as is. On her Schedule B, Debtor valued the Mercedes Benz at $7,525.00. Debtor testified that, if she is allowed to exempt the vehicle voucher, she would use it to purchase a new car. She testified that she needs to have a reliable vehicle to go to her routine doctors appointments.

It is clear that the Debtor currently has a reliable vehicle, which is up-to-date on maintenance and does not need any major repairs. Although the vehicle has approximately 84,000 miles on it, Debtor's travel needs are not such that she requires a new vehicle at this time. Additionally, if Debtor does need a new vehicle at some point in the future, she has the means

6

and a financial condition enabling her to obtain one, and she could choose to sell the Mercedes Benz to obtain any further needed cash.

## Factors 10 and 11

The tenth and eleventh factors are any special needs of the Debtor and Debtor's financial obligations. There is no evidence that Debtor anticipates any special needs or financial obligations. Debtor did not reaffirm the debts for any of her mortgages and neither of the two vehicles she owns have liens.

## CONCLUSION

The foregoing facts show that the Trustee has borne the Trustee's burden of rebutting the presumption of the correctness of the exemption claim and has by a preponderance shown that the vehicle voucher is not reasonably necessary for the support of the Debtor, and thus is not exempt under 11 U.S.C. § 522(d)(10)(E). Accordingly, the Court concludes that the Trustee's objection in that regard is sustained. The Trustee should prepare and present an appropriate order.

7

**Signed on September 14, 2010**

                                                        **/s/ Walter Shapero**
                                                        **Walter Shapero**
                                                        **United States Bankruptcy Judge**